In re Kimberly RANSOM, Debtor.

Sallie Mae Servicing Corporation,
Appellant,

v.

Kimberly Ransom, Appellee.

BAP No. WW–05–1004–KSD.
Bankruptcy No. 97–06636.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Oct. 21, 2005 at Seattle, Washington.

Filed—Dec. 27, 2005.

Christian C. Weinmann, Esq., Karr, Tuttle & Campbell, Seattle, WA, for Appellant.

John M. Hugg, Esq., Avantlaw, PLLC, Seattle, WA, for Appellee.

Before: KLEIN, SMITH, and DUNN,[1] Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

This is another attempt to use a chapter 13 plan to effect a "discharge-by-declaration" of student loan debt by ambush.

In *Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*, 193 F.3d 1083 (9th Cir.1999), the Ninth Circuit, leaving open a due process question, held that interest accrues on student loans postpetition and that confirmed chapter 13 plans bind creditors in a manner that may operate to discharge student loans.

Later, the Ninth Circuit resolved the open due process issue, ruling that a "confirmed plan has no preclusive effect on issues that must be brought by adversary proceeding, or were not sufficiently evidenced in a plan to provide adequate notice to the creditor." *Enewally v. Wash. Mut. Bank (In re Enewally)*, 368 F.3d 1165, 1173 (9th Cir.2004), *cert. denied,* 543 U.S. 1021, 125 S.Ct. 669, 160 L.Ed.2d 497 (2004).

We accurately anticipated *Enewally* when we held that any discharge of student loans through a chapter 13 plan requires notice of the quality expected of the adversary proceeding that Federal Rule of Bankruptcy Procedure 7001 prescribes for making "undue hardship" dischargeability determinations under 11 U.S.C. § 523(a)(8). *Educ. Credit Mgmt. Corp. v.*

---

1. Hon. Randall L. Dunn, United States Bankruptcy Judge for the District of Oregon, sitting by designation.

*Repp (In re Repp)*, 307 B.R. 144 (9th Cir. BAP 2003).

This appeal illustrates how *Pardee, Enewally,* and *Repp* co-exist. Under *Pardee,* student loan interest continued to accrue but the terms of the confirmed chapter 13 plan barring the payment of interest bound the student loan creditor to apply all plan payments to principal. Under the analysis in *Enewally* and *Repp,* the accrued, unpaid interest was not discharged upon completion of the chapter 13 plan because there was no determination of "undue hardship" following notice of the quality attendant to an adversary proceeding.

We AFFIRM the fixing of the principal balance owed at the end of the plan but REVERSE the bar on later collecting interest.

## FACTS

Appellee, Kimberly Ransom, filed a chapter 13 case in May 1997 that included $36,993.40 in student loan debt owed to appellant Sallie Mae Servicing Corporation ("Sallie Mae").

Her chapter 13 plan directed the trustee to pay secured debt arrearages and priority claims, and then to pay the "student loan debt which is non-dischargeable under 11 U.S.C. [§§ ] 523(a)(8) and 1328(a)(2)" in full before paying other unsecured creditors.

The order of confirmation recited that notice of the confirmation hearing was given pursuant to Federal Rule of Bankruptcy Procedure 2002(b), which requires 25-day notice of the hearing but which does not require that a copy of the plan be provided and does not require that such notice be directed to an agent for service of process. Although appellant later asserted that the plan was "provided" to Sallie Mae, it is conceded that the plan was neither served nor directed to a person at Sallie Mae upon whom a summons and complaint could be correctly served.

The 60-month plan was confirmed without objection in July 1997. The order confirming the plan was not appealed.

During the ensuing 60 months, Sallie Mae received plan payments totaling $11,417.78 on its $36,993.40 claim and did nothing else to collect the student loan debt.

Following completion of the plan, a discharge was entered that provided, in pertinent part: "the debtor is discharged from all debts provided for by the plan or disallowed under 11 U.S.C. [§ ] 502 except debt: . . . of the kind specified in paragraph (5), (8) [student loans] or (9) of 11 U.S.C. [§ ] 523(a)."

After Ransom received the discharge that expressly excluded student loan debt from its scope, Sallie Mae began sending billing statements showing a current balance of $42,222.39.

Ransom disputed the balance, contending that the following plan provision prohibited interest accrual during the life of the plan and forever barred collection of such interest:

*Other Provisions Not Inconsistent With Title 11.*

(a). Any allowed unsecured claims which are non-dischargeable under 11 U.S.C. [§ ] 523(a)(8) and/or 11 U.S.C. [§ ] 1328(a)(2) shall be paid in full prior to any payments to other allowed unsecured claims discharg[e]able under [§ ] 523 or [§ ] 1328.

The Debtor believes that the princip[al] loan amounts [creditors and acct. nos. omitted] and identified as "Student Loan" debts on Debtor's Schedule F comprise those debts which are nondischargeable under [§§ ] 523(a)(8) and/or 1328(a)(2). No post-petition interest on

these claims shall accrue against either the debtor personally or her bankruptcy estate, and no post-petition interest shall be paid on the allowed claims of these creditors through the plan or otherwise.

Unable to resolve the matter informally, she had the case reopened and filed a motion to compel Sallie Mae to revise the outstanding balance by excluding all post-petition interest accrued during the 60–month life of the plan.

Ransom's specific request for relief was that Sallie Mae be ordered to adjust her balance to $25,500.24 to reflect the "stopping of interest during the five years of Ms. Ransom's plan and the $11,417.78 in principal payments."

Ransom's theory was that the plan provision permanently barring accrual and collection of interest on a nondischargeable student loan debt is not the same as a discharge. Relying only on incantation of "*Pardee*," "binding," and "res judicata," she articulated no distinction between permanent bar and discharge.

Sallie Mae countered that giving permanent effect to plan language providing for no accrual of post-petition interest would constitute a discharge that could not, as held in *Repp*, be done without a determination of "undue hardship" following notice of a nature and quality attendant to the adversary proceeding that Rule 7001 prescribes for making such determinations.

Granting the motion, the court permanently barred collection of interest attributable to the 60 months of the plan:

(1) Sallie Mae shall comply with the terms of Debtor's confirmed Chapter 13 Plan; (2) Sallie Mae shall reverse all interest accrued during the 60 month period of the plan; (3) Sallie Mae shall

apply all payments made under the plan to debtor's principal balance; (4) Sallie Mae shall correct its statements and records regarding Debtor Kimberly Ransom's outstanding student loan balance; and (5) Such statements and records of Sallie Mae shall reflect a principal balance as of the date of discharge of $25,500.24.[2]

Without mentioning *Enewally*, the court merely rejected *Repp* as "skirting" *Pardee*.

## JURISDICTION

Subject-matter jurisdiction was based on 28 U.S.C. §§ 1334 and 157(b)(2). We have jurisdiction under 28 U.S.C. § 158(a)(1).

## ISSUES

1. Whether a permanent ban on accrual and collection of postpetition interest on student loan debt is equivalent to discharge of the interest obligation.

2. Whether accrual and collection of postpetition interest on student loan debt can be forever barred by a chapter 13 plan provision without an "undue hardship" determination under 11 U.S.C. § 523(a)(8) that is made following notice consonant with the adversary proceeding that Rule 7001 requires.

## STANDARD OF REVIEW

■■■ Whether an order or plan provision operates as a discharge is a question of law to be reviewed de novo, and whether adequate due process notice was given in any particular instance is a mixed question of law and fact that we likewise review de novo. *Repp*, 307 B.R. at 148; *GMAC Mortgage Corp. v. Salisbury (In re Loloee)*, 241 B.R. 655, 659 (9th Cir.BAP1999).

---

2. The record does not support the $25,500.24 balance. Using the proof of claim, the balance would be $25,575.62 (= $36,993.40—

$11,417.78); the schedules suggest $24,326.01 (= $35,743.79—$11,417.78). Any issue, however, is waived by silence.

## DISCUSSION

We begin by focusing on the crucial issue of whether enforcement of the no-accrual-of-interest provision in the chapter 13 plan operates as a discharge of interest attributable to the 60–month life of the plan or not. Finding a de facto discharge, we turn to the question whether the plan was confirmed in circumstances that pass muster under the due process analysis prescribed by the Ninth Circuit in *Enewally* whenever the rules of procedure require an adversary proceeding. We conclude that the plan confirmation does not pass muster and that Sallie Mae cannot be permanently barred from collecting interest.

## I

The key landmarks on the legal landscape regarding discharge of student loans are well-known and not in controversy.

■ Student loan obligations cannot be discharged in bankruptcy without a showing that repayment would cause "undue hardship" to the debtor and the debtor's dependents, as prescribed by 11 U.S.C. § 523(a)(8). *Rifino v. United States (In re Rifino)*, 245 F.3d 1083, 1087 (9th Cir.2001).

■ Post-petition interest on nondischargeable student loans is also nondischargeable. *Bruning v. United States*, 376 U.S. 358, 363, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964); *County of Sacramento v. Foross (In re Foross)*, 242 B.R. 692, 693 (9th Cir.BAP1999); *Pardee*, 193 F.3d at 1085 n. 4 (9th Cir.1999), *aff'g* 218 B.R. 916, 919–21 (9th Cir.BAP1998).

As a feature of what the Supreme Court has described as "greater procedural protection," Rule 7001(6) requires that an adversary proceeding be used to determine a student loan discharged as an "undue hardship." Fed. R. Bankr.P. 7001(6); *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 451, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004) ("Because student loan debts are not automatically dischargeable, however, the Federal Rules of Bankruptcy Procedure provide creditors greater procedural protection.").

## A

■ Ransom first contends that the plan provision purporting to bar the accrual and collection of post-petition interest on her student loan debt is not a discharge, but rather is merely a permanently enforceable plan provision barring collection. This is a distinction without a difference.

### 1

■ The essential features of a bankruptcy discharge are two: first, a determination that the debtor is no longer personally liable for the obligation; and, second, an injunction to enforce that result. 11 U.S.C. § 524(a).

The essential features of Ransom's "permanently binding plan provision," as presented in this appeal, are two: first, a determination that Ransom is no longer personally liable for the interest obligation under the student loan debt during the 60–month life of the chapter 13 plan; and, second, a court order compelling the student loan creditor to eliminate from the unpaid balance the interest charged during those 60 months.

As the essential features of a bankruptcy discharge and the consequence of the "permanently binding plan provision" are the same, it follows that the latter constitutes a de facto discharge.

### 2

Ransom's plan provided that no post-petition interest on the student loan would accrue against the debtor and the estate and said nothing about "undue hardship." Ransom would distinguish this from *Repp*

where the plan expressly provided that confirmation would constitute a determination that excepting student loan debt from discharge would impose an "undue hardship" on the debtor and the debtor's dependents. *Repp,* 307 B.R. at 147. Here, Ransom argues that her plan is different because it expressly concedes that Ransom's student loan debt is nondischargeable and makes no "undue hardship" finding. Instead, she contends the plan merely modified the terms of her obligation to Sallie Mae by preventing the accrual of post-petition interest. We are not persuaded.

In the first place, interest on a debt is part of the debt. *Cohen v. de la Cruz,* 523 U.S. 213, 223, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998); *Bruning,* 376 U.S. at 363, 84 S.Ct. 906. In *Pardee,* we squarely held that interest on a nondischargeable student loan debt is part of the nondischargeable debt. *Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee),* 218 B.R. 916, 921–22 (9th Cir. BAP 1998), *aff'd,* 193 F.3d 1083 (9th Cir.1999).

Second, the plan provision that purports to stop accrual of postpetition interest against the estate is a diversion that has no legal consequence because it is merely declarative of the statute. As a matter of law, claims for unmatured interest on unsecured claims cannot be "allowed"; hence, the estate cannot be liable for postpetition interest on a nondischargeable unsecured debt. 11 U.S.C. § 502(b)(2). However, as we explained in *Pardee,* the debtor remains liable for postpetition interest on nondischargeable student loans notwithstanding the statutory disallowance under § 502(b). *Id.* Ransom has at all times conceded that her student loans are nondischargeable.

This attempt to distinguish a permanently enforceable plan provision from a discharge is untenable.[3] If the no-accrual-of-interest plan provision is forever enforceable, then it operates to discharge student loan debt. As a de facto discharge without an adversary proceeding, it is subject to the *Enewally* analysis.

**B**

Moreover, the substantive plan provisions regarding accrual of interest (apart from the question of notice with which we deal in the next section) are so ambiguous that it is not apparent that the plan actually accomplishes what Ransom contends.

The pertinent portion of the plan is in a section titled, "Other Provisions Not Inconsistent With Title 11," which begins with an express concession that the student loan debt is nondischargeable under § 523(a)(8).

The key language in that section follows a sentence that recites that Ransom's student loans are nondischargeable: "No post-petition interest on these claims shall accrue against either the debtor personally or her bankruptcy estate, and no post-petition interest shall be paid on the allowed claims of these creditors through the plan or otherwise."

As noted above, insofar as the accrual of postpetition interest against the bankruptcy estate and payment of such interest by the trustee through the plan from property of the estate is involved, the sentence is merely declarative of existing law for the reasons we explained in *Pardee.* To that extent, the language is innocuous and accomplishes nothing.[4]

3. The Fourth Circuit rejected an identical argument. *Banks v. Sallie Mae Serv'g Corp. (In re Banks),* 299 F.3d 296, 300 (4th Cir.2002).

4. As against the debtor, no interest accruing postpetition could be collected without relief from the automatic stay. The automatic stay with respect to a chapter 13 debtor remains

Specifically, the plan language that "no post-petition interest shall be paid on the allowed claims ... through the plan or otherwise." The precise reference is to postpetition interest *on allowed claims,* which, per § 502(b)(2), is never payable with respect to unmatured contractual interest. 11 U.S.C. § 502(b)(2); [5] *Pardee,* 218 B.R. at 921–22. Under strict linguistic construction, this language does not refer to postpetition interest on nondischargeable debt and, thus, says nothing about the debtor's liability on the nondischargeable debt. The reading that is consistent with the Bankruptcy Code is contrary to that which Ransom now asserts.

Finally, the chapter 13 plan is only effective during its life. During that period, everyone must comply with it. Thereafter, the debts that are discharged are discharged. The debts that are not discharged may be collected. We are aware of no chapter 13 appellate decision holding that a chapter 13 plan can forever eliminate interest on an nondischargeable debt.

In short, the language in the chapter 13 plan regarding postpetition interest can be understood as being consistent with the law under the Bankruptcy Code that the estate is not liable to pay unmatured interest on nondischargeable debt and that the automatic stay protects the debtor from collection of such interest until the automatic stay expires, which occurs after the plan is completed and the discharge is-sued.

## II

Having concluded that the plan as enforced by the bankruptcy court would effectuate a de facto discharge of student loan debt for which Congress has specified that a finding of "undue hardship" is prerequisite and for which Rule 7001(6) prescribes an adversary proceeding, this appeal boils down to whether the plan provision that offends the statute and rules is nevertheless enforceable on the theory that it is "binding" by virtue of 11 U.S.C. § 1327(a).[6]

## A

The argument that a chapter 13 plan provision not authorized by the Bankruptcy Code without an adversary proceeding prescribed by the Federal Rules of Bankruptcy Procedure is nevertheless "binding" under § 1327(a) is precisely the argument that the Ninth Circuit confronted in *Enewally.*

In *Enewally,* the Ninth Circuit explained and drew together its pertinent precedents. First, in *Trulis v. Barton,* 107 F.3d 685, 691 (9th Cir.1995), it established that § 1327(a) is linked with the principles of res judicata such that the "binding" consequence of a confirmed plan equates with "res judicata," or claim preclusive effect. *Enewally,* 368 F.3d at 1172.

Second, the ruling in *Pardee* that a creditor who does not timely object to a plan or

---

in effect until the discharge is granted following completion of the plan. 11 U.S.C. § 362(c)(2)(C). In other words, there is nothing unusual about not collecting postpetition interest from a debtor during the life of a chapter 13.

5. To be precise, the chapter 7 distribution scheme provides for payment of postpetition interest at the legal rate on all allowed claims after all such claims have been paid in full. 11 U.S.C. § 726(a)(5). Such interest, howev-

er, is statutory and does not qualify as "unmatured" for purposes of § 502(b)(2).

6. That section provides:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
11 U.S.C. § 1327(a).

appeal a confirmation order cannot later complain about a plan provision that is inconsistent with the Bankruptcy Code is merely an application of the basic res judicata rule of claim preclusion that precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Enewally*, 368 F.3d at 1172, *citing and quoting Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), *and Pardee*, 193 F.3d at 1086.

Applying that analysis to unauthorized chapter 13 plan provisions, it explained that: "Although confirmed plans are *res judicata* [i.e. claim preclusive] to issues therein, the confirmed plan has no preclusive effect on issues that must be brought by an adversary proceeding, or were not sufficiently evidenced in a plan to provide adequate notice to a creditor." *Enewally*, 368 F.3d at 1173. In that connection, the Ninth Circuit *Enewally* panel cited with approval a Fourth Circuit decision to the same effect. *Cen–Pen Corp. v. Hanson*, 58 F.3d 89, 93 (4th Cir.1995) ("[I]f an issue must be raised through an adversary proceeding it is not part of the confirmation process and, unless it is actually litigated, confirmation will not have a preclusive effect."), *cited with approval, Enewally*, 368 F.3d at 1173.

It cautioned that one needs to take into account the Ninth Circuit's bankruptcy-specific rule of decision for applying claim and issue preclusion, which is premised on

bankruptcy presenting a "unique" context: "the principle of res judicata should be invoked only after careful inquiry because it blocks unexplored paths that may lead to truth." *Enewally*, 368 F.3d at 1172–73, *quoting Latman v. Burdette*, 366 F.3d 774, 784 (9th Cir.2004).

Reaching the due process question that had been left open in *Pardee*, the Ninth Circuit in *Enewally* reasoned that if chapter 13 plan provisions regarding matters that require an adversary proceeding do not "adequately identify" the modification of a creditor's claim, then there would be an "ambush" that would raise due process concerns. *Enewally*, 368 F.3d at 1173, *citing with approval, In re Henline*, 242 B.R. 459, 465–66 (Bankr.D.Minn.1999); *accord, Repp*, 307 B.R. at 146–54.[7] Such ambushes involving the bankruptcy discharge are disfavored. *New York v. N.Y., N.H. & Hartford R.R.*, 344 U.S. 293, 297, 73 S.Ct. 299, 97 L.Ed. 333 (1953) ("But even creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred.").

Accordingly, the Ninth Circuit concluded in *Enewally* that the offending chapter 13 plan provision was not "binding" for purposes of § 1327(a) because the provision, under the procedural circumstances of that case, would not be entitled to preclusive effect in subsequent litigation. *Enewally*, 368 F.3d at 1173.[8]

---

**7.** In *Repp*, we set forth at length the procedural differences between adversary proceeding procedure and chapter 13 plan confirmation procedure that affect the due process analysis and need not repeat them here. *Repp*, 307 B.R. at 149–56.

**8.** Another consequence of *Enewally* was that it tended to narrow an apparent split in the circuits regarding the "discharge-by-declaration" problem. The Second, Fourth, Sixth, and Seventh Circuits hold that chapter 13

plans cannot be used to discharge student loan debt by declaration. *Whelton v. Educ. Credit Mgmt. Corp.*, 432 F.3d 150 (2d Cir. 2005); *Banks v. Sallie Mae Serv'g Corp. (In re Banks)*, 299 F.3d 296 (4th Cir.2002); *Ruehle v. Educ. Credit Mgmt. Corp. (In re Ruehle)*, 412 F.3d 679 (6th Cir.2005); *In re Hanson*, 397 F.3d 482 (7th Cir.2005). In contrast, before these circuits addressed the issue, the Ninth and Tenth Circuits had permitted such discharges to be effective. *Pardee*, 193 F.3d at

## B

■ We are persuaded that *Enewally* controls the result and that the bankruptcy court was not free to ignore binding Ninth Circuit precedent.

The facts of this appeal do not pass *Enewally* muster on two counts. First, it is conceded that the plan was not served with notice of a nature and quality associated with the adversary proceeding that Rule 7001(6) requires for determining the dischargeability of debts.

Second, the terms of the supposedly "binding" plan provision are too ambiguous to place anyone on notice that student loan debt is being discharged. To the contrary, the plan provisions are misleading and have the structure of multi-step ambush.

The initial part of the ambush lies in the payment instruction in paragraph 2 of the plan that requires "payment in full on Debtor's student loan debt which is non-dischargeable under 11 U.S.C. [§§ ] 523(a)(8) and 1328(a)(2)."

Next, there are two statements in paragraph 4 of the plan that suggest that student loan debt is not being discharged. The first statement mirrors paragraph 2: "Any allowed unsecured claims which are non-dischargeable under 11 U.S.C. [§ ] 523(a)(8) and/or 11 U.S.C. [§ ] 1328(a)(2) shall be paid in full prior to any payments to other allowed unsecured claims disc-harg[e]able under [§ ] 523 or [§ ] 1328." The second is: "The Debtor believes that the princip[al] loan amounts [creditors and acct. nos. omitted] and identified as 'Student Loan' debts on Debtor's Schedule F comprise those debts which are nondischargeable under [§§ ] 523(a)(8) and/or 1328(a)(2)."

Then, subparagraph 4(b) provides that if, after 54 months, Ransom's "best efforts have not resulted in full repayment of those allowed claims otherwise non-disc-harg[e]able under [§§ ] 523(a)(8) and/or 1328(a)(2), then the Debtor shall *apply* for a discharge pursuant to [§ ] 523(a)(8)(B) with regards to such debts." [9] (Emphasis supplied.)

Taken together, the plan says three times that Ransom's student loan debt is nondischargeable and then promises that she will seek relief under § 523(a)(8) if she later wants it discharged. Since the way to "apply" for a discharge of student loan debt as an "undue hardship" under § 523(a)(8) is by way of adversary proceeding, this amounts to notice that the plan is *not* intended to operate to discharge student loan debt.

For these reasons, the language of the provision regarding non-accrual of interest and no payment of interest can be read to

1087; *Andersen v. UNIPAC–NEBHELP (In re Andersen)*, 179 F.3d 1253 (10th Cir.1999).

The circuit split, however, may be more apparent than real. The panel in *Pardee* relied on *Andersen*, which had not yet been decided when *Pardee* was argued (*Pardee* argued 5/13/99; *Andersen* decided 6/7/99; *Pardee* decided 7/7/99). Another Tenth Circuit panel has recently cabined *Andersen* to the limited situation where there is an express finding of "undue hardship" in the chapter 13 plan and has expressed the view that *"Andersen* was wrongly decided and should be reconsidered." *Poland v. Educ. Credit Mgmt. Corp. (In re Poland)*, 382 F.3d 1185, 1189 n. 2 (10th Cir.2004). Likewise, *Enewally* dealt with the Ninth Circuit's unresolved due process problem in a manner that commonly will lead to results consistent with the rest of the circuits. Hence, any split may be in the process of healing itself.

9. There has been no subsection § 523(a)(8)(B) since the elimination of subsection § 523(a)(8)(A) by the Act of Nov. 29, 1990, Pub.L. 101–647, § 3621, 104 Stat. 4964–65. The inaccurate citation in Ransom's plan, however, has no substantive consequence as the current text of § 523(a)(8) preserves the "undue hardship" provision of former § 523(a)(8)(B).

be merely declarative of law, rather than as a permanent ban on collecting the interest attributable to the debt. The estate is not liable for unmatured interest on unsecured nondischargeable debt. 11 U.S.C. § 502(b)(2). The automatic stay protects the debtor until the discharge is issued after the completion of the plan. 11 U.S.C. § 362(c)(2)(C).

The plan did not say that Sallie Mae would never be able to collect the interest that accrued against the debtor during the life of the plan. In context, the language of the plan created the impression that the discharge status of interest was not being altered and that Sallie Mae could safely rely on settled law that interest on a debt is part of the debt. *Cohen*, 523 U.S. at 223, 118 S.Ct. 1212; *Bruning*, 376 U.S. at 363, 84 S.Ct. 906; *Pardee*, 218 B.R. at 921–22.

It follows that there was not adequate notice to Sallie Mae that the discharge status of an interest component of its student loan debt would be affected by the plan provision in question, which *Enewally* requires in order to afford preclusive effect to such a provision. *Enewally*, 368 F.3d at 1173.

Finally, our conclusion is confirmed by considering another procedural alternative that is more than hypothetical. It would still be possible for Sallie Mae to file an adversary proceeding under § 523(a)(8) to establish the discharge status of the interest component of its student loan debt that is attributable to the 60 months of the chapter 13 plan. While the debtor is usually the plaintiff in such matters, the creditor would have standing to seek the same determination, and there is no specific limitations period for such an action. If such an action were to be filed, *Enewally* would lead to the conclusion that claim preclusion would not apply to bar Sallie Mae from taking such action. *Enewally*, 368 F.3d at 1173.

Nor do we perceive injustice here. To the contrary, Ransom probably should never have been permitted to have nondischargeable unsecured debt paid before dischargeable unsecured debt. A provision favoring nondischargeable debt over dischargeable debt normally, without any substantial showing to the contrary, is an unfair discrimination that violates 11 U.S.C. § 1322(b)(1) and that flunks the confirmation standard of 11 U.S.C. § 1325(a)(1). *Labib–Kiyarash v. McDonald (In re Labib–Kiyarash)*, 271 B.R. 189, 192–96 (9th Cir. BAP 2001); *McDonald v. Sperna (In re Sperna)*, 173 B.R. 654, 658–60 (9th Cir. BAP 1994); *Amfac Distrib. Corp. v. Wolff (In re Wolff)*, 22 B.R. 510, 512 (9th Cir. BAP 1982). Since, however, the order confirming the plan was not appealed on a theory of unfair discrimination, the confirmation remains effective. *Pardee*, 193 F.3d at 1087.

Nevertheless, Ransom appears to have reaped an undeserved benefit at the expense of her other unsecured creditors by being able to have more of the principal of her student loan debt paid as a result of an apparent unfair discrimination.

\* \* \* \* \* \*

As noted at the outset, the Ninth Circuit decisions in *Pardee* and *Enewally*, as well as our decision in *Repp*, co-exist. Under *Pardee*, interest continued to accrue as part of the student loan debt but the terms of the confirmed chapter 13 plan bound the student loan creditor to apply all plan payments to principal. Under the analysis in *Enewally*, the accrued, unpaid interest was not discharged upon completion of the chapter 13 plan because there was no determination of "undue hardship" following notice of the quality attendant to an adversary proceeding. The bankruptcy court was not free to ignore *Enewally*.

Accordingly, we AFFIRM as to the $25,500.24 principal balance owed at the end of the plan and REVERSE as to the liability of the debtor to pay interest accrued during the life of the plan.