IN RE: Adam Edward JORDAN and Kimberley Jordan, Debtors.

**Case No. 15-51041**

United States Bankruptcy Court, S.D. Ohio, Eastern Division, **at Columbus.**

Signed July 1, 2016

Laura M. Nesbitt, The Nesbitt Law Firm, Dublin, OH, for Debtors.

Edward M. King, Frost Brown Todd LLC, Louisville, KY, for Educational Credit Management Corporation.

Faye D. English, Chapter 13 Trustee, Columbus, Ohio.

Bethany J. Hamilton, Assistant United States Attorney, Columbus, Ohio, for United States Department of Education

### OPINION AND ORDER ON OBJECTIONS TO CONFIRMATION OF THE DEBTORS' CHAPTER 13 PLAN

John E. Hoffman, Jr., United States Bankruptcy Judge

## I. Introduction

Under the Bankruptcy Code, student loan debts are dischargeable only if repayment of the debts would impose an undue hardship on the debtors and their dependents. Adam Edward Jordan and Kimberley Jordan (collectively, the "Debtors") have not attempted to demonstrate undue hardship, and their student loan debts therefore currently are nondischargeable. It is hornbook bankruptcy law that debtors remain personally liable for the entirety of their nondischargeable debts. Yet the Debtors are seeking confirmation of a Chapter 13 plan containing a special provision that would eliminate their personal liability for a portion of their nondischargeable student loan debt. Because this proposed treatment of the student loan debt violates the Bankruptcy Code, the Court denies confirmation of the plan without prejudice to the Debtors' right to file an amended plan that is consistent with this opinion.

## II. Jurisdiction and Constitutional Authority

The Court has jurisdiction to hear and determine this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(L). Although the Court would have the constitutional authority to enter an order denying confirmation of the Debtors' Chapter 13 plan

even if the order were final, *see, e.g., In re Digerati Techs., Inc.*, No. 13–33264, 2014 WL 2203895, at \*2 (Bankr.S.D.Tex. May 27, 2014), it is settled that an order denying confirmation of a Chapter 13 plan is not a final order if it permits the debtor to propose an amended plan. *Bullard v. Blue Hills Bank*, — U.S. —, 135 S.Ct. 1686, 191 L.Ed.2d 621 (2015).

## III. Background

### A. The Debtors' Student Loan Debt

On February 25, 2015 (the "Petition Date"), the Debtors commenced their bankruptcy case by filing a petition for relief under Chapter 13 of the Bankruptcy Code. On their Schedule F—Creditors Holding Unsecured Nonpriority Claims (Doc. 1), the Debtors listed several student loan debts, and two entities—the Educational Credit Management Corporation ("ECMC") and the United States Department of Education (the "Department")—filed proofs of claim based on these debts:

- The Debtors scheduled two student loan claims against Mrs. Jordan in the names of "ED America/GLELSI" and the Great Lakes Higher Education Corporation. After the Petition Date, the loans were assigned to ECMC, which filed proof of claim number 4-1, asserting an unsecured nonpriority claim against the bankruptcy estate of Mrs. Jordan in the amount of $44,584.01. ECMC's claim included interest accruing prior to the Petition

Date in the amount of $3,508.28 and, pursuant to 34 C.F.R. § 682.410(b)(2), collection costs in the amount of $8,727.47.[1]

- The Debtors listed a claim against Mr. Jordan on Schedule F for which the Department filed proof of claim number 9-1, asserting an unsecured nonpriority claim against the bankruptcy estate of Mr. Jordan in the amount of $48,038.64, including interest in the amount of $1,324.65.

Student loan borrowers are in "default" if they are delinquent on their monthly payments for 270 days. *See* 20 U.S.C. § 1085(*l*). According to the Debtors' own testimony at the confirmation hearing, their student loan debts were more than 270 days delinquent as of the Petition Date. Doc. 57 (the "Hearing Transcript") at 36, 39–40. In their brief in support of confirmation (the "Debtors' Brief") (Doc. 64), the Debtors conceded that each of their student loans was in default on the Petition Date. Debtors' Br. at 7.

### B. The Debtors' Proposed Treatment of Their Student Loan Debt

The Debtors seek confirmation of a Chapter 13 plan (the "Plan") (Doc. 44) containing several special provisions.[2] The special provision at issue here (the "Special Provision") provides:

> Student Loans: Any student loan creditor shall be permanently enjoined

---

1. Under 34 C.F.R. § 682.410(b)(2), creditors such as ECMC are permitted "to charge borrowers a flat-rate percentage for collection costs [currently up to 25% of unpaid principal and accrued interest] ... as opposed to requiring the [creditor] to track the individual charges associated with the collection of a particular borrower's account." *Black v. Educ. Credit Mgmt. Corp.*, 459 F.3d 796, 800 (7th Cir.2006).

2. Under the Local Bankruptcy Rules, Chapter 13 plans "shall conform to the mandatory chapter 13 plan ("Mandatory Form Plan") adopted in the locality in which the plan is to be filed." Local Rule 3015-1(a)(1). A Chapter 13 debtor may include "special provisions" (i.e., provisions "applicable to the particular circumstances of the debtor") in a plan, but must do so "only in the area of the Mandatory Form Plan specifically designated for special provisions." Local Rule 3015-1(a)(3).

from charging late fees, collection fees, or any other penalties based solely upon its pro rata Chapter 13 Plan distributions being less than the minimum monthly payments it would otherwise be contractually entitled to during the life of the plan. Any default status on any student loan account is waived by the creditor pursuant to § 1322(b)(3) upon confirmation and the student loan creditor shall remove the default status on the student loan account as of the date of plan confirmation; cease any ongoing reporting of default status to the national credit bureaus; cease all wage garnishment; and cease any requested withholding of income tax refunds. An interest rate no higher than the standard promissory note interest rate shall apply to any student loan as of the date of filing going forward through discharge.

Plan at 12.

In other words, the Special Provision would:

- permanently enjoin the Debtors' student loan creditors from charging certain late fees, collection fees and other penalties;
- unilaterally declare that the creditors have waived the default status on the Debtors' student loans upon confirmation of the Plan and require the creditors to (i) remove the default status on the loan accounts as of the date of confirmation of the Plan and (ii) cease

reporting the default status to the national credit bureaus; and

- prohibit the creditors from accruing interest at the default rate from the Petition Date to the date the Debtors receive a discharge.[3]

Contending that the Special Provision violates the Bankruptcy Code and other federal law, the Department, ECMC and Faye D. English, the Chapter 13 trustee (the "Trustee"), oppose confirmation of the Plan.[4]

### IV. Legal Analysis

#### A. The Nondischargeable Nature of Student Loan Debt

Student loan debt is nondischargeable unless debtors carry their burden of proving that "excepting such debt from discharge ... would impose an undue hardship on [them] and [their] dependents." 11 U.S.C. § 523(a)(8). Debts excepted from discharge under § 523(a)(8) are not discharged in Chapter 13 cases. *See* 11 U.S.C. § 1328(a)(2). Thus, as is the case under other chapters of the Bankruptcy Code, unless debtors establish undue hardship, "[s]tudent loans ... fall within the category of nondischargeable debts and pass through the [Chapter 13] bankruptcy process unaffected." *Ekenasi v. Educ. Res. Inst. (In re Ekenasi)*, 325 F.3d 541, 545 (4th Cir.2003).

The Debtors have not demonstrated undue hardship—in fact, they have not even attempted to do so—and the student loan

---

**3.** Counsel for the Department stated during the hearing on confirmation that the interest rate on the loan held by the Department is 6.75% per annum and that the loan "doesn't have a higher interest rate due to a default." Hr'g Tr. at 29.

**4.** During a hearing on a prior version of the Plan containing a student loan debt provision that was essentially the same as the Special

Provision, the Trustee stated that she was "not opposing this plan and [was] recommending it for confirmation." Doc. 34 (transcript of October 20, 2015 hearing) at 6. The Court then raised the issue of whether the Debtors' treatment of their student loan debt was appropriate under the Bankruptcy Code, *id.* at 8–12, and the Trustee thereafter filed her objection to confirmation.

debt held by the Department and ECMC therefore currently is nondischargeable. In addition, the Department and ECMC hold unsecured claims. As discussed below, the unsecured nature of the claims and the nondischargeability of the debt on which those claims are based have consequences dictated by longstanding Supreme Court precedent.

## B. Amounts Accruing Postpetition on Unsecured Claims

■ The Department and ECMC both hold unsecured claims. ECMC's proof of claim expressly states that it includes interest only to the extent the interest had accrued as of the Petition Date, and there is no reason to believe that the Department failed to likewise so limit the amount of its claim. This is because unsecured creditors generally are not permitted to recover postpetition interest on their claims.[5] *See* 11 U.S.C. § 502(b)(2) ("[I]f [an] objection to a claim is made, the court ... shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that ... such claim is for unmatured interest.");[6] *see also Official Comm. of Unsecured Creditors v. Dow Corning Corp. (In re Dow Corning*

*Corp.)*, 456 F.3d 668, 682 (6th Cir.2006) (describing as "persuasive" those cases in which courts "have denied unsecured creditors attorneys' fees, costs and expenses from insolvent debtors based upon, *inter alia*, [an] analogy between these charges and postpetition interest").

■ Section 502(b)(2) of the Bankruptcy Code applies even if the debt on which the claim is based is nondischargeable.[7] The Department and ECMC do not argue otherwise—nor could they in light of Supreme Court precedent. In *Bruning*, a decision involving nondischargeable tax debt, the Supreme Court pointed out that "the general rule for liquidation of the bankruptcy estate has long been that a creditor will be allowed interest only to the date of the petition in bankruptcy." *Bruning*, 376 U.S. at 361–62, 84 S.Ct. 906. According to the Supreme Court, "[t]he basic reasons for the rule denying post-petition interest as a claim against the bankruptcy estate are the avoidance of unfairness as between competing creditors and the avoidance of administrative inconvenience." *Id.* at 362, 84 S.Ct. 906. The Supreme Court explained that when "assets are ... insufficient to pay debts in full" (i.e., the bankruptcy estate is insolvent),

---

**5.** The Supreme Court has noted, however, that "if ... the estate proved sufficient to [pay] the claims in full, interest as well as principal should be paid." *Bruning v. United States*, 376 U.S. 358, 362 n. 4, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964) (quoting *Am. Iron & Steel Mfg. Co. v. Seaboard Air Line Ry. Co.*, 233 U.S. 261, 266, 34 S.Ct. 502, 58 L.Ed. 949 (1914)). And "[i]n accordance with the note in *Bruning*, lower courts have ruled that solvent estates should pay post-petition interest. ..." *Ground Improvement Techniques, Inc. v. Plan Comm. (In re Washington Grp. Int'l, Inc.)*, 460 B.R. 280, 285 (D.Nev.2011) (citing cases).

**6.** By contrast, the allowed amount of an over-secured claim may include "interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or

State statute under which such claim arose." 11 U.S.C. § 506(b).

**7.** Although a Chapter 13 plan may "provide for the payment of interest accruing after the date of the filing of the petition on unsecured claims that are nondischargeable under section 1328(a)," the interest "may be paid only to the extent that the debtor has disposable income available to pay such interest after making provision for full payment of all allowed claims." 11 U.S.C. § 1322(a)(10). The record suggests that the Debtors do not have sufficient disposable income to pay all allowed claims in full. In addition, if the estate is solvent, all unsecured creditors receive postpetition interest at the rate specified in the Chapter 13 plan. According to the Plan, the Debtors' bankruptcy estates are insolvent.

allowing postpetition interest on unsecured claims would be either pointless or unfair:

> If all claims ... bore the same rate of interest ... it would be immaterial whether the dividend was calculated on the basis of the principal alone or of principal and interest combined. But some of the debts might carry a high rate and some a low rate, and hence inequality would result in the payment of interest which accrued during the delay incident to collecting and distributing the funds. As this delay was the act of the law, no one should thereby gain an advantage or suffer a loss.

*Id.* at 362 n. 4, 84 S.Ct. 906 (quoting *Am. Iron & Steel Mfg. Co.*, 233 U.S. at 266, 34 S.Ct. 502); *see also United States v. River Coal Co.*, 748 F.2d 1103, 1108 (6th Cir. 1984) ("[A] claim for interest on a debt which is nondischargeable is not one which may be asserted against the bankruptcy estate.").

Although *Bruning* was decided under the Bankruptcy Act, the rule disallowing unsecured claims for postpetition interest even when the associated debt is nondischargeable applies in Chapter 13 cases under the Bankruptcy Code. *See, e.g.,* *Educ. Credit Mgmt. Corp. v. Kirkland (In re Kirkland)*, 600 F.3d 310, 317 (4th Cir. 2010) ("ECMC could not have included post-petition interest in its proof of claim to [the debtor's] bankruptcy estate, and the Chapter 13 Trustee would have been without authority to pay any such interest.").[8]

## C. Personal Liability for Nondischargeable Debt

█ The rule discussed above contrasts sharply with another well-established principle: Holders of nondischargeable debt may recover amounts they are owed—including postpetition interest—from debtors personally once the automatic stay terminates.[9] *See Bruning*, 376 U.S. at 362–63, 84 S.Ct. 906.[10] The debtor in *Bruning* argued that the rule that "denies post-petition interest as a claim against the bankruptcy estate also applies to discharge the debtor from personal liability for such interest even if the underlying ... debt is not discharged." *Id.* at 362, 84 S.Ct. 906. Not so, the Supreme Court held, because "one would assume that Congress, in providing that a certain type of debt should survive bankruptcy proceedings as a personal liability of the debtor, intended per-

---

8. Where, as here, debtors are in default on their student loan debt as of the date of the bankruptcy filing, it has been held that the allowable amount of a student loan creditor's proof of claim includes collection costs calculated pursuant to 34 C.F.R. § 682.410(b)(2) even when the creditor, like ECMC, obtained the debt by assignment after the bankruptcy case was filed and therefore incurred no collection costs itself before the petition date. *See Black*, 459 F.3d at 798–99. Because no objection to ECMC's proof of claim has been filed, the Court need not reach the issue decided in *Black*. As explained below, if the collection costs are not properly included in the proof of claim, then ECMC would be able to recover the costs from the Debtors personally. Thus, it appears to be in the Debtors' interest for ECMC to include the collection costs in its proof of claim.

9. The automatic stay of acts against a Chapter 13 debtor personally continues until the earliest of the time the case is closed, the time the case is dismissed, or the time a discharge is granted or denied. *See* 11 U.S.C. § 362(c)(2). In general, Chapter 13 debtors generally receive their discharge "after completion ... of all payments under the plan[.]" 11 U.S.C. § 1328(a).

10. By contrast, creditors holding discharged debt are prohibited by the Bankruptcy Code from seeking "to collect, recover or offset any [discharged] debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2).

sonal liability to continue as to the interest on that debt as well as to its principal amount." *Id.* at 360, 84 S.Ct. 906.

The Supreme Court noted that "[t]he basic reasons for the rule denying post-petition interest as a claim against the bankruptcy estate are ... inapplicable to an action brought against the debtor personally." *Id.* at 362–63, 84 S.Ct. 906. The reason this is so, the Supreme Court stated, is that "collection of postpetition interest [from the debtor personally] cannot inconvenience administration of the bankruptcy estate, cannot delay payment from the estate unduly, and cannot diminish the estate in favor of high interest creditors at the expense of other creditors." *Id.* at 363, 84 S.Ct. 906. That is, "in holding that the debtor remains personally responsible for postpetition accrued interest, the *Bruning* Court 'distinguished between denial of post-petition interest against the *bankruptcy estate* on a nondischargeable debt and the accrual of interest on a nondischargeable debt during the pendency of the bankruptcy to be collected from the *debtor* after the bankruptcy proceeding is completed.'" *IRS v. Cousins (In re Cousins)*, 209 F.3d 38, 40 (1st Cir.2000) (quoting *Leeper v. Pa. Higher Educ. Assistance Agency*, 49 F.3d 98, 101 (3d Cir.1995)); *see also River Coal Co.*, 748 F.2d at 1106 ("The 'general rule' that a creditor is allowed interest on his debt only to the time a petition in bankruptcy is filed has no application to nondischargeable debts being asserted against the bankruptcy debtor and not against the bankruptcy estate." (citing *Bruning*, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772)).

As numerous federal circuit courts have held, even though *Bruning* was decided under the Bankruptcy Act, the rule that debtors remain personally liable for interest accruing postpetition on nondischargeable debt applies under the Bankruptcy Code. *See Salazar v. Comm'r*, 338 Fed. Appx. 75, 78 (2d Cir.2009); *Cousins*, 209 F.3d at 40; *Ward v. Bd. of Equalization (In re Artisan Woodworkers)*, 204 F.3d 888, 891 (9th Cir.2000); *Leeper*, 49 F.3d at 101; *Fullmer v. United States (In re Fullmer)*, 962 F.2d 1463, 1468 (10th Cir.1992), *abrogated on other grounds*, *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000); *Burns v. United States (In re Burns)*, 887 F.2d 1541, 1543 (11th Cir.1989); *Hanna v. United States (In re Hanna)*, 872 F.2d 829, 830–31 (8th Cir.1989). Further, "while *Bruning* involved the accrual of post-petition interest on a nondischargeable tax debt, its reasoning has been applied to other types of nondischargeable debts," including student loan debt in Chapter 13 cases. *Leeper*, 49 F.3d at 101; *see also, e.g., Kirkland*, 600 F.3d at 317 (holding in the context of a Chapter 13 case involving student loan debt that "the post-petition interest obligation cannot be claimed against the bankruptcy estate and is, instead, a personal obligation of the debtor that remains at the close of the bankruptcy proceeding and after discharge of the underlying debt for the principal" because "[t]he post-petition interest neither affects nor is affected by [the debtor] having filed bankruptcy or the administration of her bankruptcy estate"); *Kielisch v. Educ. Credit Mgmt. Corp. (In re Kielisch)*, 258 F.3d 315, 321 (4th Cir.2001) (holding that postpetition interest on student loan debt "continues to accrue during the pendency of the [Chapter 13 case] and [absent proof of undue hardship] the debtor remains personally liable for the full amount of the student loan debt"); *Educ. Credit Mgmt. Corp. v. Buchanan*, 276 B.R. 744, 747 (N.D.W.Va.2002) ("The Court finds that student loan debt, including interest on the debt, must pass unaffected through a Chapter 13 proceeding unless failing to discharge interest on the loan would sub-

ject the debtor to undue hardship."); *Uber v. Nelnet, Inc. (In re Uber)*, 443 B.R. 500, 506 (Bankr.S.D.Ohio 2011) ("[A] debtor may pay 100% of an allowed pre-petition student loan claim through her Chapter 13 plan and still be liable to the student loan creditor following her discharge for the accrual of post-petition interest and other costs during the life of the plan.").

■ The rationale of *Bruning* applies equally to all amounts accruing on nondischargeable debt, including default rate interest and postpetition collection costs, late fees and penalties. After all, a creditor's collection of such postpetition amounts from a debtor personally "cannot inconvenience administration of the bankruptcy estate, cannot delay payment from the estate unduly, and cannot diminish the estate in favor of [certain] creditors at the expense of other creditors." *Bruning*, 376 U.S. at 363, 84 S.Ct. 906. Thus, courts have held that creditors may recover default rate interest on nondischargeable debt from debtors personally. *See Bank of Doniphan v. Graves (In re Graves)*, No. 14–4031, 2016 WL 552676, at *3 (Bankr.D.Neb. Feb. 11, 2016) (holding that a creditor would be entitled to recover interest on its judgment at the default rate of 16% per annum if its claim was determined to be nondischargeable because the creditor "is not seeking payment of the 16% post-petition interest from the bankruptcy estate" but instead "is asking for the judgment debt to be held nondischargeable so that it can collect that amount from [the debtor] personally" (citing *Bruning*, 376 U.S. at 362, 84 S.Ct. 906)); *Rapid Funding, LLC v. Stabile (In re Stabile)*, No. 04–3169, 2005 WL 6761115, at *5 (Bankr.W.D.Pa. Sept. 13, 2005) (determining that creditor holding debt excepted from discharge by § 523(a)(2)(A) and (B) and § 523(a)(4) of the Bankruptcy Code was permitted to recover interest at the default rate from the debtor).

Creditors holding nondischargeable debt also may recover collection costs from debtors personally. *See Educ. Credit Mgmt. Corp. v. Cameron–Hild (In re Cameron–Hild)*, No. 02–462, 2003 WL 22011414, at *1 (D.Ariz. Aug. 5, 2003) ("It was error for the bankruptcy court to disregard the costs associated with collecting the student loan ... once it found that the debt was not dischargeable under the exception for undue hardship. Every component of a student loan debt, including interest and collection costs are integral parts of the debt and cannot be discharged absent undue hardship."); *In re Martish*, No. 14–02975–5–DMW, 2015 WL 167154, at *3–4 (Bankr.E.D.N.C. Jan. 12, 2015) (holding that student loan creditors may recover collection costs associated with nondischargeable student loans from debtors personally); *Uber*, 443 B.R. at 505–06 ("It is well settled that if interest and collection costs are provided by contract, these amounts will continue to accrue postpetition on the unpaid balance of a nondischargeable student loan obligation during the course of a debtor's Chapter 13 case and while payments are being made under a debtor's confirmed plan.") (footnote omitted); *In re Sprolito*, 359 B.R. 423, 430 (Bankr.D.P.R.2006) ("The Court concludes that [the debtor's] student loans are nondischargeable and that [the creditor] is entitled to post-petition interest and reasonable collection fees."); *In re Featherston*, 238 B.R. 377, 381 (Bankr.S.D.Ohio 1999) ("[T]he court will follow other bankruptcy courts in holding that reasonable collection costs fall under the exception to discharge for student loan obligations found in 11 U.S.C. § 523(a)(8).").

The *Bruning* rule also applies to postpetition penalties. *See Bd. of Equalization of Cal. v. Ward (In re Artisan Woodworkers)*, 225 B.R. 185 (9th Cir. BAP 1998) ("[B]ased upon the authority of *Bruning*,

we ... conclude that the bankruptcy court erred in finding that the Debtor was not personally liable for the postpetition, preconfirmation interest and penalties accruing on the Appellant's [nondischargeable] tax claim."), *aff'd*, 204 F.3d 888; *Gable v. Educ. Credit Mgmt. Corp. (In re Gable)*, 311 B.R. 904, 909 (Bankr.D.Kan.2003) (holding that "the *debt* remaining at the close of the case, consisting of postpetition interest and penalties, was expressly excepted from discharge under § 523(a)(8) and the language of the discharge order"); *In re Fox*, 130 B.R. 571, 575 (Bankr. W.D.Wash.1991) (holding that "[t]he discharge upon the entry of an order of confirmation of an individual debtor's plan of reorganization does not cover interest and penalties on [nondischargeable] claims that accrue post-petition").

■ In sum, the law is clear: Once the automatic stay no longer applies, creditors holding nondischargeable debt may recover amounts that accrue postpetition from debtors personally as though the bankruptcy never happened. Moreover, federal appellate courts have applied the *Bruning* rule in cases in which Chapter 13 debtors whose plans did not expressly provide for a discharge in essence were attempting to effect a discharge of amounts owing on nondischargeable debt. *See Banks v. Sallie Mae Servicing Corp. (In re Banks)*, 299 F.3d 296 (4th Cir.2002), *abrogated on other grounds by United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010); *Sallie Mae Servicing Corp. v. Ransom (In re Ransom)*, 336 B.R. 790 (9th Cir. BAP 2005), *vacated on other grounds*, 302 Fed.Appx. 567 (9th Cir.2008). In *Banks*, the Chapter 13 debtor sought relief from personal liability for postpetition interest on a nondischargeable student loan debt and to that end included a provision in his plan stating that "[d]uring the pendency of this case, no

interest, penalties, late charges, or costs of collection, including attorneys fees, shall accrue." *Banks*, 299 F.3d at 299. The debtor argued that he was seeking "to prohibit the accrual of post-petition interest and not to discharge interest accrued," but the Fourth Circuit rejected this argument, concluding that the debtor was making "a distinction without a difference." *Id.* at 300. According to the Fourth Circuit, "[a] Chapter 13 plan provision mandating that interest does not accrue clearly acts as a discharge of the post-petition interest the creditor is entitled to receive." *Id.* In *Ransom*, the debtor "contend[ed] that the plan provision purporting to bar the accrual and collection of post-petition interest on her student loan debt is not a discharge, but rather is merely a permanently enforceable plan provision barring collection." *Ransom*, 336 B.R. at 794. As in *Banks*, the bankruptcy appellate found that to be "a distinction without a difference." *Id.*

District courts and bankruptcy courts likewise have rejected debtors' attempts to obtain what effectively is a discharge by calling it something else. *See U.S. Dep't of Educ. v. Blair (In re Blair)*, 301 B.R. 181 (D.Md.2003); *Jordan v. Colo. Student Loan Program (In re Jordan)*, 146 B.R. 31 (D.Colo.1992); *In re Little*, No. 03–17506–WHD, 2003 WL 21656215 (Bankr. N.D.Ga. June 16, 2003). In *Blair*, a Chapter 7 case, the bankruptcy court found that the debtor had failed to establish undue hardship. Despite making this finding, the court entered an order imposing a two-year moratorium that excused the debtor from making payments on her student loan debt and barred the Department from accruing interest on her loan account. The district court reversed the order imposing the moratorium, concluding that "[t]he bankruptcy court's imposition of the moratorium effectively functions as a partial discharge because it prevents [the Department] from accruing any inter-

est on [the debtor's] student loans; that is, during its period of operation, the moratorium would relieve [the debtor] of personal liability on the interest portion of her obligation." *Blair*, 301 B.R. at 186. Similarly, the debtor in *Jordan* provided in her Chapter 13 plan "that the accrual of interest on [her] student loans would be tolled during the pendency of the plan." *Jordan*, 146 B.R. at 32. The bankruptcy court relied on *Bruning* to hold that "postpetition interest on a debt that is nondischargeable, such as a student loan, is also nondischargeable" and denied confirmation of the plan." *Id.* at 32. Construing the plan provision as providing "for the discharge of the interest accruing on [the debtor's] student loans during the term of the plan," the district court affirmed the bankruptcy court's decision to deny confirmation of the plan. *Id.* at 32–33. In *Little*, the debtor's Chapter 13 plan provided that the Department "shall be permanently barred from collecting any post-petition interest or asserting any claim against the debtor after he receives a discharge." *Little*, 2003 WL 21656215, at *1. The bankruptcy court held that this "provision, to the extent that its intent and effect is to discharge postpetition student loan interest, contravenes § 523(a)(8) of the Bankruptcy Code and should not have been included in the Debtor's Chapter 13 Plan." *Id.*

### D. The Special Provision Violates the Bankruptcy Code.

▬ As was the case in the decisions discussed above in which debtors attempted to obtain a discharge by another name, the Special Provision effectively grants the Debtors a discharge of a portion of their student loan debt without their having made a showing of undue hardship. Thus, the Special Provision (1) is inconsistent with *Bruning* and the cases following it and (2) violates §§ 1328(a)(2) and 523(a)(8) of the Bankruptcy Code. In fact, the Spe-

cial Provision violates the Bankruptcy Code in three ways.

First, pursuant to the Special Provision, the Debtors are attempting to: (1) unilaterally declare that the Department and ECMC have waived the default status on their student loans upon confirmation; and (2) require the creditors to remove the default status on the loan accounts as of the date of confirmation of the Plan and cease reporting the default status to the national credit bureaus. During the confirmation hearing, counsel for the Debtors stated that one purpose of this provision is to "waive [the] default as of the date of filing, so that when [the Debtors] get out of the plan … the student loan company is no longer able to just simply garnish them right away again." Hr'g Tr. at 10. But creditors holding nondischargeable debt are permitted to do precisely that. Declaring a unilateral waiver of a default—and requiring the Department and ECMC to act as though no prepetition default had occurred—is contrary to the principle that student loan debt passes through bankruptcy unaffected absent a showing of undue hardship.

Second, addressing the Debtors' concern about "default interest rate[s]," *id.* at 9, the Special Provision states that "[a]n interest rate no higher than the standard promissory note interest rate shall apply to any student loan as of the date of filing going forward through discharge," Plan at 12. This provision is improper because, as the holders of nondischargeable debt, the Department and ECMC may accrue postpetition interest, including any applicable default rate interest, and also may recover the interest from the Debtors personally once the automatic stay no longer applies.

Third, the Special Provision would permanently enjoin the Department and ECMC from recovering certain other

amounts from the Debtors personally even if the creditors otherwise could collect those amounts under applicable law. In particular, the Special Provision provides that "[a]ny student loan creditor shall be permanently enjoined from charging late fees, collection fees, or any other penalties based solely upon its pro rata Chapter 13 Plan distributions being less than the minimum monthly payments it would otherwise be contractually entitled to during the life of the plan." *Id.* While the Department stated in its objection to confirmation (the "Department Objection") (Doc. 61) that it does not charge collection costs *during* bankruptcy cases, Dep't Obj. at 2, it has not indicated whether it will attempt to recover those costs from the Debtors personally *after* the automatic stay terminates. And while ECMC has included in its proof of claim collection costs calculated as a percentage of principal and interest that had accrued *as of the Petition Date*, it has not indicated whether it intends to seek from the Debtors personally (once they receive their discharge) additional collection costs calculated as a percentage of the interest that *accrues after the Petition Date*.

As the Department points out, the permanent injunction is ambiguous. *Id.* at 2–3. When a debtor is already in default on the petition date, the prepetition default itself provides the basis for the imposition of collection costs, and the costs arguably are not based "solely" on the difference between the plan payments and the contractual loan payments. Under those circumstances, the injunction could be interpreted as having no effect whatsoever. Yet, as the Department also points out, "debtors' counsel routinely put this provision in plans, [so] they must believe" it has some effect. *Id.* at 3. For example, the permanent injunction perhaps could be interpreted to prohibit creditors from pursuing debtors personally for collection costs

based on interest accruing after the date of the bankruptcy filing even if the debtors were in default when they filed their bankruptcy cases. But because any such collection costs are nondischargeable, the discharge would not prevent student loan creditors from seeking to recover those amounts from debtors personally. And, as noted above, once debtors receive their discharge (or their Chapter 13 case is dismissed), the automatic stay would no longer be in force to prohibit creditors from doing so.

In support of the Special Provision's permanent injunction, the Debtors rely on *In re Harding*, 423 B.R. 568 (Bankr. S.D.Fla.2010), as well as this Court's prior confirmation, based on *Harding*, of unopposed Chapter 13 plans that included such an injunction. *See* Doc. 42 (the Debtors' initial response to the confirmation objections) at 2–3. In the course of examining other components of the Special Provision that exceed the scope of the *Harding* injunction (e.g., the unilateral waiver of the Debtors' default), the Court has revisited the injunction and concluded that *Harding*'s rationale does not support it.

In *Harding*, the bankruptcy court "permanently enjoin[ed] the student loan creditor [Sallie Mae] from charging late fees, collection fees, or any other penalties based solely upon its *pro rata* Chapter 13 Plan distributions being less than the minimum monthly payments it would be otherwise contractually entitled to during the life of the five-year Plan." *Harding*, 423 B.R. at 570. The bankruptcy court granted the injunction after denying the debtor's request to include Sallie Mae's student loan claim in a class separate from other unsecured nonpriority claims. The debtor was concerned that "failure to timely make the student loan payments in full may result in late fees, penalties, and collection fees," and she therefore sought the sepa-

rate classification so that she could make the regular monthly payments due to Sallie Mae rather than paying it pro rata with other unsecured nonpriority creditors. *Id.* at 571. The debtor contended that, because the last payment to Sallie Mae would become due after the final payment under the Chapter 13 plan was due, separate classification was warranted under § 1322(b)(5) of the Bankruptcy Code, which provides that "notwithstanding paragraph (2) of this subsection," Chapter 13 plans may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5).

Engaging in careful statutory analysis, the *Harding* court held that § 1322(b)(1)'s prohibition against unfair discrimination applies even when a debtor attempts to cure the prepetition default and maintain payments on unsecured debt under § 1322(b)(5). *Harding*, 423 B.R. at 571–74. The bankruptcy court also held that separate classification would result in unfair discrimination against other unsecured creditors in violation of § 1322(b)(1). *Id.* at 574–76.[11] Under the bankruptcy court's ruling, Sallie Mae would receive pro rata plan payments with other holders of unsecured nonpriority claims. And under *Bruning* and the cases following it, as well as §§ 1328(a)(2) and 523(a)(8) of the Bankruptcy Code, Sallie Mae was entitled (once the automatic stay was no longer in force) to recover any postpetition collection costs and other postpetition amounts from the debtor personally. But the *Harding* court nonetheless permanently enjoined Sallie

Mae from recovering penalties, as well as the late fees and collections costs that the court equated with penalties. The bankruptcy court issued the injunction after conducting what it described as a "fair balancing" of "three competing aims": (1) "the Debtor's fresh start," (2) "the clear legislative objective of student loan repayment" and (3) "fair treatment of creditors as a whole." *Id.* at 575–76.

The analysis undertaken by the *Harding* court in balancing these aims does not hold up under close scrutiny. First, after recognizing that "regular interest may accrue [on nondischargeable debt]" under *Bruning,* the bankruptcy court concluded that penalties "may not be imposed unless specifically exempted from the automatic stay." *Id.* at 576–77. That statement would be accurate if by "imposed" the court meant "collected," because it is true that a postpetition penalty may not be collected while the automatic stay is in place. But the *Harding* decision makes clear that by "imposed" the court meant "accrued." As discussed above, the rationale of *Bruning* applies equally to postpetition penalties, late fees and collection costs, and those items therefore may accrue on nondischargeable debt to be collected from the debtor personally once the automatic stay terminates. *Harding*'s holding that a creditor owed nondischargeable debt may accrue penalties, late fees and collection costs to be collected from the debtor personally once the automatic stay terminates only if those items are "specifically exempted from the automatic stay," *Id.* at 577–78, finds no support in the Bankruptcy Code.

In fact, *Harding* itself recognized that "mere internal bookkeeping entries by a

---

11. This part of the *Harding* decision is persuasive. But because the Plan here does not separately classify the claims held by the Department and ECMC, this Court, unlike the

*Harding* court, need not analyze the interplay between § 1322(b)(5)'s cure-and-maintain provision and the prohibition against unfair discrimination contained in § 1322(b)(1).

creditor"—bookkeeping entries are what creditors create when they accrue amounts to be collected later—"do not in and of themselves violate the automatic stay." *Id.* at 577. Acknowledging this, the *Harding* court took the second step in its balancing analysis: holding that a creditor would be violating the automatic stay by attempting, after the automatic stay had terminated, to collect "late fees, collection fees, or any other penalty" from a debtor personally "based solely upon [the creditor's] *pro rata* Chapter 13 Plan distributions being less than the minimum monthly payments it would otherwise be contractually entitled to during the life of the [Chapter 13 plan]." *Id.* Under those circumstances, the bankruptcy court reasoned, the accrual of the penalties during the bankruptcy case would "not be mere internal bookkeeping entries" because the entries would constitute an " 'act to collect, assess, or recover a claim against the [D]ebtor that arose before the commencement of the case under this title.' 11 U.S.C. § 362(a)(6)." *Id.* But the court also acknowledged that "§ 362(a) cannot stay actions specifically authorized elsewhere in the Bankruptcy Code." *Id.* And, as explained above, nothing in the Bankruptcy Code prohibits holders of nondischargeable debt from accruing late fees, collection costs and penalties during the case so that they can collect them from debtors personally once the automatic stay expires. The automatic stay therefore does not prohibit creditors from accruing those amounts. Indeed, the *Harding* court recognized that "the automatic stay prohibits Sallie Mae from charging these fees and penalties while the Debtor is in bankruptcy, but its protection ceases when the Debtor emerges from bankruptcy." *Id.*

The court therefore took the third step in its balancing analysis. According to the *Harding* court: "If Sallie Mae were to subsequently assess fees and penalties based solely upon its *pro rata* Chapter 13 Plan distributions being less than the contract's minimum monthly payments, Sallie Mae would essentially be 'back-dating' those transactions" and "[t]he effective dates of such assessments would therefore fall within the scope of § 362(a)(6)'s protection." *Id.* But that proves too much. For if the *Harding* court's analysis regarding fees and penalties were correct, then it would apply equally to postpetition interest, and a student loan creditor that "subsequently assess[ed] [postpetition interest] based solely upon its *pro rata* Chapter 13 Plan distributions being less than the contract's minimum monthly payments" likewise would violate the automatic stay—a result that clearly is not the law. The bankruptcy court in *Harding* itself does not seem to have been fully persuaded by its own suggestion that accruing penalties, late fees and collection costs on nondischargeable debt would violate the automatic stay. Indeed, the court finished step three of its analysis by stating "[a]t least that is one argument." *Id.*

According to the bankruptcy court, "[a] better argument is that § 1328 discharges such assessments because ... only the principal and regular interest is debt 'of a kind specified in section 523(a),' " *Id.* and "§ 1328 discharges ... penalties [for payment shortfalls occurring while the Debtor is in bankruptcy] should Sallie Mae ever attempt to assess them in the future," *Id.* at 578 (citing 11 U.S.C. § 1328(c)). Yet this fourth step in the court's balancing analysis fares no better than the others. Under § 1328(c)(2) of the Bankruptcy Code, debt "of a kind specified in section 523(a)" is not discharged in Chapter 13. 11 U.S.C. § 1328(c)(2). Because student loan debt is nondischargeable under § 523(a)(8) absent a showing a undue hardship, it is "of a kind specified in section 523(a)." *Harding*, 423 B.R. at 578. Debt is nondischargeable under § 523(a)(8) if the debt is for a stu-

dent "loan," 11 U.S.C. § 523(a)(8), and there is no support in § 523(a)(8) itself or the case law interpreting it for the view that a debt for a loan includes only principal and regular interest.

At the fifth step of its analysis, the *Harding* court concluded that "allowing Sallie Mae to assess penalties would impair [the debtor's] fresh start." *Id.* True, the "principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) (internal quotation marks omitted). As the Supreme Court has stated, however, "[t]he statutory provisions governing nondischargeability reflect a congressional decision to exclude from the general policy of discharge certain categories of debts— such as ... certain unpaid educational loans," and "Congress evidently concluded that the creditors' interest in recovering full payment of debts in these categories outweighed the debtors' interest in a complete fresh start." *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The fresh start therefore provides no justification for effectively discharging a portion of a debtor's student loan debt absent a showing of undue hardship.

At the sixth and final step of its balancing analysis, the *Harding* court noted that "[f]or three decades, Congress has repeatedly taken steps to encourage the use of Chapter 13. Included in Congress' efforts are the availability of a broader discharge to Chapter 13 debtors[.]" *Harding*, 423 B.R. at 578. Congress, however, has not made the Chapter 13 discharge so broad as to include student loan debt. Thus, the Court may not rely on the notion that Congress "has taken steps to encourage the use of Chapter 13" to justify overriding the provisions of the Bankruptcy

Code making the entirety of student loan debt nondischargeable absent a showing of undue hardship. *Cf. In re Lower*, 311 B.R. 888, 896 (Bankr.D.Colo.2004) ("The Court recognizes that this ruling may not foster the apparent intent of Congress to encourage debtors to pay debts in chapter 13 rather than discharge them in chapter 7. But the Court is unwilling, in fact unable, to exalt those salutary policies over the clear language of the statute and the reasoned interpretation of that statutory language in the case law.").

For the reasons explained above, once the automatic stay no longer applies, the nondischargeable nature of the debt owed to the Department and ECMC permits them to recover amounts from the Debtors personally to the extent the creditors are otherwise entitled to recover the amounts under federal law. It is therefore improper for the Debtors, absent a showing of undue hardship, to attempt to permanently enjoin the Department and ECMC from recovering those amounts from the Debtors.

**E. The Court Must Deny Confirmation of the Plan.**

"[A] Chapter 13 plan that proposes to discharge a student loan debt without a determination of undue hardship violates §§ 1328(a)(2) and 523(a)(8)." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 276, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010). The Supreme Court also has held that "bankruptcy courts have the authority—indeed, the obligation—to direct a debtor to conform his plan to the requirements of §§ 1328(a)(2) and 523(a)(8)." *Id.* at 277, 130 S.Ct. 1367. Indeed, a bankruptcy court may confirm a Chapter 13 plan only if it complies with the applicable provisions of the Bankruptcy Code. *See* 11 U.S.C. § 1325(a)(1). In fact, "the conditions set forth in § 1325(a) are requirements the debtor must satisfy to

qualify a Chapter 13 plan for confirmation." *Shaw v. Aurgroup Fin. Credit Union*, 552 F.3d 447, 457 (6th Cir.2009). Because the Special Provision would have the effect of discharging the Debtors' personal liability for collection costs and default rate interest without their having made the showing of undue hardship required by § 523(a)(8) (and thus § 1328(a)(2)), the Special Provision violates the Bankruptcy Code, and the Court accordingly must deny confirmation of the Plan.

■ In *Espinosa*, the Supreme Court noted that " '[d]ebtors and their attorneys face penalties under various provisions for engaging in improper conduct in bankruptcy proceedings,' see Fed. Rule Bkrtcy. Proc. 9011." *Espinosa*, 559 U.S. at 278, 130 S.Ct. 1367 (quoting *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992)). According to the Supreme Court, "[t]he specter of such penalties should deter bad-faith attempts to discharge student loan debt without the undue hardship finding Congress required." *Id.* "[T]he Bankruptcy Rules require a party seeking to determine the dischargeability of a student loan debt to commence an adversary proceeding by serving a summons and complaint on affected creditors." *Id.* at 268–69, 130 S.Ct. 1367. In the future, the Court will consider the imposition of sanctions under Rule 9011 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule 9011") whenever a debtor includes in a Chapter 13 plan a special provision that effectively seeks to obtain a discharge on student loan debt.[12]

## F. The Debtors' Arguments in Support of Confirmation

The Debtors make three arguments in support of the Special Provision, each of which is unconvincing. According to the Debtors, the Plan "does not *attempt* to discharge student loan debt, and if confirmed, the proposed plan language will not *result* in any discharge of student loan debt." Debtors' Br. at 4. Yet the Debtors effectively are attempting to obtain a discharge of a portion of their student loan debt without establishing undue hardship. Just as other courts have rejected creative attempts to obtain what effectively is a discharge by another name, so must this Court.

■ The Debtors also suggest that relieving them of the default on their student loan debt is good policy because "undue hardship" is an "almost impossible standard" to meet and because the combined effect of the nondischargeability of student loan debt and the permissibility of collection costs and postpetition interest is that "many borrowers leave bankruptcy owing a higher balance on their student loans than before filing for bankruptcy protection." *Id.* at 4, 8. The Court appreciates the difficulty many debtors encounter in attempting to establish undue hardship

---

12. The Department and ECMC argue that the Special Provision is forbidden by law because it violates the Higher Education Act of 1965 and its implementing regulations, an argument that has support in the case law. Dep't Obj. at 4; Doc. 62 (ECMC's brief in support of its confirmation objection) at 4; *see In re Stevens*, No. 14–33862–svk, 2015 WL 8968036 (Bankr.E.D.Wis. Dec. 14, 2015). In addition, the creditors also contend that the Debtors have not proposed the Plan in good faith, which if true would render the Plan unconfirmable. 11 U.S.C. § 1325(a)(3). But in light of the fact that the Special Provision is impermissible for the reasons explained above, and given that the Plan must be denied under § 1325(a)(1) for lack of compliance with the Bankruptcy Code and inconsistency with Supreme Court precedent, the Court need not and does not address the Department's and ECMC's arguments that the Debtors proposed the Plan in bad faith or by means forbidden by the Higher Education Act of 1965 and its implementing regulations.

under the standard set by the controlling case law.[13] But while the Court may sympathize with the plight faced by debtors, it is not free to simply ignore the law. And while the Debtors may have a reasonable policy argument, it must fail for two reasons. First, as explained above, relieving the Debtors' of their default would constitute the functional equivalent of a discharge of a portion of their student loan debt without a showing of undue hardship and therefore would violate §§ 523(a)(8) and 1328(a)(2) of the Bankruptcy Code. Second, the Debtors' position is contrary to the rule announced by the Supreme Court in *Bruning* that creditors may pursue debtors personally for postpetition interest on nondischargeable claims—a rule that logically extends to postpetition collection costs and other postpetition amounts and has been so extended by numerous courts.

 Finally, the Debtors contend that their unilateral waiver of the default on their student loan debt is authorized by § 1322(b)(3) of the Bankruptcy Code, which states that a Chapter 13 plan "may ... provide for the curing or waiving of any default." 11 U.S.C. § 1322(b)(3). As one leading commentator has stated, "[l]ittle has been written concerning the term 'waiving' of defaults found in Code § 1322(b)(3), as contrasted with the 'curing' of defaults." 7 *Norton Bankr. L. &*

*Prac. 3d* § 149:8 (Hon. William L. Norton, Jr. et al. eds. 2016). The Debtors posit that "the seldom-used § 1322(b)(3) exist[s] ... to cure or waive student loan default." Debtors' Br. at 10. But they offer absolutely no support for their position—in the Bankruptcy Code, the case law, or from any other source. Nor is there any basis for their contention that the Plan "may set forth that such default is waived, and it shall be." *Id.* at 5.

 The Bankruptcy Code does not define "waiver," and the Court therefore must look to the term's "ordinary meaning." *In re Harkins,* 491 B.R. 518, 527 (Bankr.S.D.Ohio 2013) (quoting *Hall v. United States,* —— U.S. ——, 132 S.Ct. 1882, 1887, 182 L.Ed.2d 840 (2012)). "A word's ordinary meaning is often determined by reference to dictionaries." *Id.* (quoting *Terrell v. United States,* 564 F.3d 442, 451 (6th Cir.2009)). The *Merriam–Webster Unabridged Dictionary* defines waiver as "the act of ... intentionally relinquishing or abandoning a known right, claim, or privilege." *Merriam–Webster Unabridged Dictionary,* http://unabridged. merriam-webster.com/unabridged/waiver. The definition of waiver set forth in *Black's Law Dictionary* is similar, but makes clear that waiver can be either express or implied. *See Black's Law Dictionary* (10th ed. 2014) (defining waiver as "[t]he voluntary relinquishment or aban-

---

**13.** *See Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett),* 487 F.3d 353, 358–59 (6th Cir. 2007) ("As 'undue hardship' is not defined in the Bankruptcy Code, we have joined most of our sister circuits in adopting the three-part *Brunner* test, named for the case in which it originated. ... To satisfy the second prong [of the *Brunner* test], [a debtor] must show that circumstances indicate a 'certainty of hopelessness, not merely a present inability to fulfill financial commitment.'" (quoting *Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler),* 397 F.3d 382, 386 (6th Cir.2005)). Judges and commentators alike have pointed out how difficult it can be for debtors to establish undue

hardship. *See, e.g.,* Symposium, *Consumer Bankruptcy Panel, Undue Hardship: An Analysis of Student Loan Debt Discharge in Bankruptcy,* 31 Emory Bankr. Dev. J. 215, 231, 234 (2015) ("So I have to make a finding that the debtor has shown that there's a certainty of hopelessness [and] that ... all the way out to twenty-five [years] that there's no real chance they'll pay it. That can become a pretty impossible standard [to meet]. ... [T]hese glosses that have been put on, like certainty of hopelessness and so forth, they make it really, really hard [for debtors to establish undue hardship].") (comments of Bankruptcy Judge C. Ray Mullins).

donment—express or implied—of a legal right or advantage"); *see also In re Espanol*, 509 B.R. 422, 428 (Bankr.D.Conn.2014) ("A waiver has been defined as 'the intentional relinquishment or abandonment of a known right or privilege. ... Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied.'" (quoting *C.R. Klewin Ne., LLC v. Bridgeport*, 282 Conn. 54, 919 A.2d 1002, 1023 ( 2007))).

In general, "[a] right may be waived only [by] the party that holds that right." *Restored Images Consulting, LLC v. Dr. Vinyl & Assocs., Ltd.*, No. 4:14–CV–527–DGK, 2016 WL 3064142, at *10 (W.D.Mo. May 31, 2016). Here, the rights that the Plan would waive are those provided by the Bankruptcy Code to the Department and ECMC as the holders of nondischargeable debt. The Supreme Court noted in *Espinosa* that creditors may agree in certain instances "that payment of a student loan debt will cause the debtor an undue hardship" and that "[i]n such a case, there is no reason that compliance with the undue hardship requirement should impose significant costs on the parties or materially delay confirmation of the plan," because "[n]either the [Bankruptcy] Code nor the [Bankruptcy] Rules prevent the parties from stipulating to the underlying facts of undue hardship." *Espinosa*, 559 U.S. at 278, 130 S.Ct. 1367. Thus, if the Department and ECMC had agreed to waive their rights, the waiver could have been incorporated into the Plan pursuant to § 1322(b)(3). The Department and ECMC, however, have expressly stated that they are not waiving any rights afforded them by virtue of the Bankruptcy Code's classification of their claims against the Debtors as nondischargeable obligations (absent an undue hardship finding). The Debtors' interpretation of § 1322(b)(3) essentially turns the phrase "the plan may provide for the curing or waiving of any default" into "a debtor shall be entitled to force a creditor to waive any default." In light of the Department's and ECMC's objections to confirmation, the Court cannot find that they have waived the Debtors' default either expressly or by implication. Section 1322(b)(3) therefore does not apply in this case.[14]

There is another reason § 1322(b)(3) cannot apply here: Whatever § 1322(b)(3) means when it states that a plan "may provide for the ... waiving of any default," the subsection cannot be interpreted so broadly that it would permit Chapter 13 debtors to propose plans that violate the confirmation requirements of § 1325(a) of the Bankruptcy Code. *See In re Weller*, 548 B.R. 392, 395 (Bankr.D.Mass.2016) ("What a Chapter 13 debtor may *not* do ... is substitute the *options* which may be proposed by a plan under § 1322 for *requirements* mandated by § 1325 for confirmation of a plan."). As discussed above, in order to be confirmed, a Chapter 13 plan must "compl[y] with the provisions of [Chapter 13] and with the other applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1325(a)(1).

As the Court also explained, by proposing to effectively discharge a portion of the Debtors' student loan debt without establishing undue hardship, the Plan fails to comply with §§ 523(a)(8) and 1328(a)(2) of the Bankruptcy Code. There is nothing in the Bankruptcy Code suggesting that the Court may dispense with the requirement that it find undue hard-

14. Commentators have suggested that unilateral waiver might be appropriate for defaults that, by their very nature, are noncurable. *See, e.g.*, 7 *Norton Bankr. L. & Prac. 3d* § 149:8 (Hon. William L. Norton, Jr. et al. eds. 2016) ("[A] plan might provide that the debtor's failure to perform maintenance on collateral be forgiven, and if the plan were confirmed, this breach or default by the debtor would be waived.").

ship before granting a discharge of student loan debt merely because the student loan creditor fails to object to confirmation. In fact, the law is just the opposite. *See Espinosa*, 559 U.S. at 275, 276–77, 130 S.Ct. 1367 ("[T]he bankruptcy court must make an undue hardship finding even if the creditor does not request one .... Failure to comply with this self-executing requirement should prevent confirmation of the plan even if the creditor fails to object, or to appear in the proceeding at all."). "Statutory construction ... is a holistic endeavor," and "[a] provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme ... because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (citations omitted). For the reasons explained above, construing § 1322(b)(3) in the manner suggested by the Debtors—as allowing for the waiver of a default on student loan debt without a showing of undue hardship— would have a substantive effect that is incompatible with §§ 523(a)(8) and 1328(a)(2) of the Bankruptcy Code.

In light of the foregoing, whenever plan provisions that attempt to effectively discharge student loan debt come to the Court's attention—either through its own review or through objections by the Chapter 13 trustee or a student loan creditor—the Court will deny confirmation and consider the imposition of sanctions under Bankruptcy Rule 9011. That said, if an unconfirmable plan is confirmed because the Court's review misses an objectionable provision and because the Chapter 13 trustee [15] and the student loan creditor [16] fail to bring the provision to the Court's attention through an objection, the order confirming the plan will have the binding effect set forth in § 1327 of the Bankruptcy Code (unless there is a basis to revoke the order under § 1330(a) of the Bankruptcy Code or unless the order is found to be void under the analysis set forth in *Espinosa*). In other words, creditors that fail to review and object to Chapter 13 plans containing objectionable provisions potentially do so at their own peril. *See Espinosa*, 559 U.S. at 275, 130 S.Ct. 1367 ("United had actual notice of the filing of Espinosa's plan, its contents, and the Bankruptcy Court's subsequent confirmation of the plan. ... United therefore forfeited its arguments regarding the validity of service or the adequacy of the Bankruptcy Court's procedures by failing to raise a timely objection in that court.").

## V. Conclusion

For the reasons stated above, confirmation of the Plan is **DENIED**. The Debtors shall have 21 days from the entry of this opinion and order in which to file an amended plan that is consistent with this opinion. Failure to do so may result in the dismissal of the Debtors' case without further hearing or notice.

**IT IS SO ORDERED.**

---

**15.** "The chapter 13 trustee has an affirmative statutory duty to appear and be heard on the question of plan confirmation." *Meyer v. Hill (In re Hill)*, 268 B.R. 548, 554 (9th Cir. BAP 2001) (citing 11 U.S.C. § 1302(b)(2)(B)).

**16.** *See In re Szostek*, 886 F.2d 1405, 1414 (3d Cir.1989) ("While we do not understate the importance of the obligation of the bankruptcy court or the trustee to determine that a plan complies with the appropriate sections of the Bankruptcy Code prior to confirmation of the plan, we nonetheless recognize that the affirmative obligation to object to the [debtors'] plan rested with [the creditor] ....").